# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

MICHAEL BRANDON WILLIAMS,                     Case No. 3:14-cv-01878-ST

        Plaintiff,                                  OPINION AND ORDER

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Michael Williams ("Williams"), brings this action under the Social Security Act
("SSA"), 42 USC § 405(g), for judicial review of the final decision of the Commissioner of
Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI")
benefits.  The Commissioner concedes reversible error and moves the court to remand for
additional administrative proceedings.  Williams opposes additional proceedings and seeks a
remand for an award of benefits.  All parties have consented to allow a Magistrate Judge to enter
final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket
#7).  For the reasons set forth below, the Commissioner's motion is granted, and this case is
reversed and remanded for further administrative proceedings.

## ADMINISTRATIVE HISTORY

On January 25, 2011, at age 22, Williams protectively filed an application for SSI, alleging a disability onset date of October 15, 2009, which was later amended to match his protective filing date.  Tr. 55, 166-79. [1]  His claim was denied initially on August 3, 2011, and upon reconsideration on November 2, 2011.  Tr. 100-07.  Williams filed a request for a hearing, which was held on September 14, 2012, before Administrative Law Judge ("ALJ") Wynne O'Brien-Pearsons.  Tr. 52-72.  The ALJ issued an unfavorable decision on September 27, 2012.  Tr. 41-48.  Williams appealed the decision, and on February 4, 2014, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 25-27.  After Williams retained appellate counsel, the Appeals Council set aside its decision to consider additional evidence and issued a second decision dated August 8, 2014, denying the request for review.  Tr. 8-10.

## BACKGROUND

Born in 1989, Williams was 22 years old when he filed his application.  Tr. 166.  He exhibited poor behavior at home and in school and had a history of depression and anxiety throughout childhood.  Tr. 196-97, 220, 329.  He did not complete high school and never obtained his GED.  Tr. 56, 330.  When he left school, he had a 0.83 GPA.  Tr. 191.  He has worked only a few weeks or months at a time, primarily in fast food jobs.  Tr. 330.  He has been terminated from every job due to poor performance, except for one which he found overwhelming and quit after the first day.  Tr. 57-60, 330.  He alleges that he is unable to work due to the combined impairments of attention deficit disorder, anxiety, and concentration and focus problems.  Tr. 270.

///

---

[1]  Citations are to the pages of the official transcript of the Administrative Record filed on April 9, 2015 (docket #11).

## ALJ'S FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR § 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ found that Williams had not engaged in substantial gainful activity since January 24, 2011. Tr. 43.

At step two, the ALJ determined that Williams had the following severe impairments: dysthymia, borderline intellectual functioning ("BIF"), and attention-deficit hyperactivity disorder ("ADHD"). *Id.*

At step three, the ALJ determined that Williams does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR § 416.920(a)(4)(iii) & (d), 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing of Impairments"). *Id.*

The ALJ then found that Williams has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: no more than simple, routine, repetitive work tasks/instructions; no more than occasional interaction with the public including no transactional interaction; no more than occasional interaction with co-workers including no tandem tasks; and no paced work. Tr. 44.

///

///

///

At step four, the ALJ found that Williams has no past relevant work.  Tr. 47.

Finally at step five, considering Williams's age, education, work experience, and RFC, the ALJ concluded that he could perform jobs as an industrial cleaner, hospital food service worker, and laundry worker II.  Tr. 47.

Accordingly, the ALJ found that Williams has not been under a disability since January 25, 2011.  Tr. 48.

## **DISCUSSION**

Williams contends that he has an impairment or combination of impairments that meets or medically equals the severity of the impairment of intellectual disability in Listing 12.05C. For reasons that are not clear, the ALJ wholly failed to address at step three of the sequential analysis whether Williams met the requirements for a finding of disability under Listing 12.05C. The Commissioner concedes that the ALJ erred, but moves to remand this case for further neuropsychological testing and/or psychological expert testimony in order to resolve outstanding factual issues.

A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment.  To "meet" a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question.  *Sullivan v. Zebley*, 493 US 521, 530 (1990); *Tackett,* 180 F3d at 1099; *see also* 20 CFR § 416.925(c)(3) (same standard in SSI context).  To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the most similar listed impairment.  *Tackett*, 180 F3d at 1099-1100, quoting 20 CFR § 404.1526; *see also* 20 CFR § 416.926(b) (medical equivalence in SSI context).  Listing 12.05 provides in relevant part:

///

> 12.05  Intellectual disability:  Intellectual disability refers to
> significantly subaverage general intellectual functioning with
> deficits in adaptive functioning initially manifested during the
> development period; *i.e.*, the evidence demonstrates or supports
> onset of the impairment before age 22.  The required level of
> severity for this disorder is met when the requirements in A, B, C,
> or D are satisfied.
>
> * * *
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70
> and a physical or other mental impairment imposing an additional
> and significant work-related limitation of function . . . .

Although the introductory paragraph is a diagnostic description for intellectual disability, rather than a specific criterion, it functions as a substantive requirement.  *See* Listing 12.00(A) ("If your impairment satisfies the diagnostic description in the introductory paragraph [of Listing 12.05] and any one of the four sets of criteria, we will find that your impairments meets the listing."); *Kennedy v. Colvin*, 738 F3d 1172, 1176 (9th Cir 2013).  In other words, the introductory paragraph (prong one) establishes that a qualifying intellectual disability exists, and the criteria within "C" (prongs two and three) establish its severity.  "Thus, Listing 12.05C has three main components:  (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation."  *Kennedy*, 738 F3d at 1176.

Williams argues that he satisfies Listing 12.05C based on a psychological assessment prepared by Scott Kaper, Ph.D., on July 21, 2011, reporting IQ scores within the relevant range (Tr. 328-34), an educational history of an extremely low GPA and eventual withdrawal from high school (Tr. 56, 191), as well as a work history which consists of a variety of jobs that lasted only a few months and resulted in termination for poor performance.  Tr. 57-63.  The

Commissioner concedes that the third prong of Listing 12.05C is met,[2] but contends that a remand is necessary for further development on the first and second prongs.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F3d 1172, 1179 (9th Cir 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004) (citations omitted). The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F3d 1178.

The record contains the following IQ scores for Williams in 2011 at age 22: nonverbal IQ of 61, verbal IQ of 75 and full-scale IQ of 66. Tr. 331. As the Commissioner concedes, these scores fall within the IQ range required to meet the second prong of Listing 12.05C. However, the Commissioner questions the validity of the IQ scores.

Dr. Kaper noted that Williams's 2011 IQ scores were "below what is indicated in the records," citing previous IQ scores in the mid-80s. Tr. 332, citing Tr. 195 (full-scale IQ of 84 at age 13), 204 (full-scale IQ of 80 at age 10). Although the "reasons for these discrepancies in his testing are not clear," both "showed a relative strength for verbal material" and "a working memory capacity at least commensurate with his other abilities, and that carried his relative strength in the verbal domain." *Id.* Based on the "trend in this most current testing," Dr. Kaper found that Williams "likely has greater potential than he is currently actualizing" with respect to "hands on" work. Tr. 332-33. He summarized his findings as follows:

---

[2]  The Commissioner revised the regulations in 2000 to clarify that additional impairments defined as "severe" in 20 CFR §§ 404.1520(c) and 416.920(c) satisfy the third prong of Listing 12.05C. "We always intended the phrase to mean that the other impairment is a 'severe' impairment as defined in §§ 404.1520(c) and 416.920(c)." *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed Reg 50746, 50772 (Aug. 21, 2000).

> [Williams's] intelligence level would seem that he is it [*sic*] in the borderline range, as that would seem to be the most appropriate middle ground between his earlier performance and the one conducted here.  Further scrutiny of this issue is also warranted, ideally when he has better control over his mood.  Medication and psychotherapy should be initiated to that end.  It is perhaps only once his mood has improved that he would be in a position to cultivate the relative strengths in his intellectual profile:  the 'hands on' work that he enjoys most, and is likely most promising as the basis of a future vocation. . . .  Given the relative strengths in his intellectual functioning and likelihood that the current testing underestimated his full abilities, he would seem capable of handling his own funds in his own best interest.

Tr. 334.

Williams argues that nothing in the record indicates that Dr. Kaper found his "full scale IQ of 60 through 70 IQ test results" to be invalid.  Nevertheless, the ALJ could find that Williams's full scale IQ score was invalid.  *Thresher v. Astrue*, 283 F App'x 473, 475 (9th Cir 2008) ("The regulations' inclusion of the word 'valid' in Listing 12.05C makes the ALJ's authority clear.").  The Ninth Circuit has "never decided what information is appropriately looked to in deciding validity."  *Id* at 475 n6.  Decisions from other courts indicate that the ALJ may rely on external evidence of a score's invalidity, such as improper testing conditions or a claimant's participation in activities inconsistent with the IQ score.  *Id* (citing cases).

Based on his review of Dr. Kaper's report, the ALJ did not find that the IQ scores were valid or invalid, but did state that they "appeared to be an underestimation of [Williams's] true ability in both verbal and non-verbal domains."  Tr. 46.  Dr. Kaper was, at best, equivocal as to the validity of the IQ scores, stating that Williams's intelligence level seems "most appropriate" in the "middle ground" between his earlier performance in the 80s (Tr. 332) and his 2011 testing in the 60s (Tr. 331), which would fall in the 70s outside the scope of Listing 12.05C.  The record does not indicate any head injury or other medical problem to support a significant drop in IQ points or any significant decline in functioning at any point.  Thus, as urged by the

Commissioner, whether the 2011 IQ scores are valid requires further development of the record with the aid of neuropsychological testing and/or psychological expert testimony. Given this unresolved issue, a remand for further administrative proceedings is required.

The ALJ also failed to make a finding as to the first prong of Listing 12.05C whether Williams manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to age 22. The requirement of an early onset, and the related reference to the "developmental period," are "intended to limit coverage to an innate condition, rather than a condition resulting from a disease or accident in adulthood." *Gomez v. Astrue*, 695 F Supp2d 1049, 1061 (CD Cal 2010) (citation and quotation marks omitted). "A claimant may use circumstantial evidence to demonstrate adaptive functioning deficits, such as 'attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history.'" *Pedro v. Astrue*, 849 F Supp2d 1006, 1011–12 (D Or 2011), quoting *Campbell v. Astrue*, No. 1:09–CV–00465GSA, 2011 WL 444783, at * 17 (ED Cal Feb. 8, 2011) (remaining citation omitted).

If Williams's low IQ scores at age 22 are valid, then some circuits would apply a rebuttable presumption that his intellectual disability manifested itself prior to age 22 based on the concept that IQ is a stable attribute. *See Hodges v. Barnhart*, 276 F3d 1265, 1268 (11th Cir 2001) (IQ scores after age 22 satisfy the listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout . . . life") (citation omitted); *Muncy v. Apfel*, 247 F3d 728, 734 (8th Cir  2001) ("Mental retardation is not normally a condition that improves as an affected person ages. . . . . Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning"); *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F2d 666, 668-69 (4th Cir 1989). Other circuits have been reluctant to adopt a

*per se* presumption and require some evidence that the onset preceded age 22. *Markle v. Barnhart*, 324 F3d 182, 188-89 (3rd Cir 2003); *Foster v. Halter*, 279 F3d 348, 354-55 (6th Cir 2001).

The Ninth Circuit has not yet considered adoption of this rebuttable presumption. *Fatheree v. Colvin*, No. 1:13-cv-01577-SKO, 2015 WL 1201669, at *11 (ED Cal Mar. 16, 2015). Nonetheless, district courts in the Ninth Circuit, including this court, have applied the presumption. *See Robinson v. Comm'r of Soc. Sec.*, No. 2:14-cv-0051-KJN, 2015 WL 925609, at *4 (ED Cal Mar. 2, 2015) (collecting cases adopting rebuttable presumption); *see also Brooks v. Astrue*, No. 3:11-CV-01252-SI, 2012 WL 4739533, at *6 (D Or Oct. 3, 2012) (collecting District of Oregon cases). *But see Clark v. Astrue*, 2012 WL 423635, at *5–6 (ED Cal Feb. 8, 2012) (declining to adopt rebuttable presumption, "especially in a situation where there are glaring discrepancies in the IQ scores in the first place"); *Rhein v. Astrue*, 2010 WL 4877796, at *8 (ED Cal Nov. 23, 2010) (declining to adopt rebuttable presumption on grounds it would remove plaintiff's burden at Step Three).

This court finds those cases applying the rebuttable presumption persuasive. It is especially persuasive in this case where Williams's IQ scores were obtained so close to the time he turned age 22 and are consistent with his history of special education services in school and poor work history. Tr. 194, 198, 224, 227-62.

In response, the Commissioner points to contrary evidence regarding Williams's activities of daily living and social functioning. Dr. Kaper stated that Williams has a "very small" social network, "tends to get distracted while his son is in his care or will engage in a solitary pursuit, such as playing video games, that lead to insufficient supervision," and has difficulty negotiating "[o]pen-ended social interactions." Tr. 333. However, he found "nothing

to indicate that [Williams] could not successfully complete basic activities, e.g., hygiene, cleaning up around the house, though here again his judgment was sometimes suspect, as he might for instance, push both clean and dirty clothes together in a closet and consider them 'put away.'" *Id.* These observations, however, are based on Williams's functioning after age 22, not during his developmental period. Moreover, Dr. Kaper concluded that "given his limited adaptive functioning," Williams's ability to handle funds "should be revisited." *Id.* Thus, the record contains ample circumstantial evidence demonstrating that Williams had deficits in adaptive functioning before the age of 22. Therefore, if his IQ scores are valid, demonstrating the severity of his intellectual functions, Williams meets the requirements of Listing 12.05C.

The delay built in to this case as a result of the failure of the ALJ to discuss Listing 12.05C is unwarranted and unfortunate. However, as discussed above, an outstanding issue remains to be resolved as to whether Williams's IQ scores in 2011 are valid. Thus, a remand for is further administrative proceedings is required.

///

///

///

///

///

///

///

///

///

///

10 – OPINION AND ORDER

## <u>ORDER</u>

For the reasons stated above, the Commissioner's decision is **REVERSED and**

**REMANDED** pursuant to sentence four of 42 USC § 405(g) for further administrative

proceedings.  On remand, an ALJ shall further evaluate step three of the sequential evaluation

process, particularly Listing 12.05C, to include obtaining testimony from a psychological expert

and/or sending Williams for further neuropsychological testing.  If the ALJ finds that Williams

does not satisfy Listing 12.05C, then the ALJ shall:  (1) give further consideration to the medical

opinion of State agency psychologist Kordell Kennemer, Psy.D. (Tr. 83-92), and articulate the

weight given to this opinion; (2) re-evaluate Williams's RFC; (3) reassess Williams's credibility;

and, (4) if warranted, obtain vocational expert testimony to evaluate steps four and five of the

sequential evaluation process.

Dated this 17th day of December, 2015.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge